**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

JUN 2 5 2019

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE, *et al.*,**

        **Plaintiffs,**

        v.                           **Civil Action No. 2:16cv279**

**GREGORY AIME, *et al.*,**

        **Defendants.**

**ORDER**

This matter is before the Court on two (2) Motions: Counterclaim Plaintiffs'[1] Motion to Reconsider ("Motion to Reconsider"), Doc. 169; and Aime's Motion to Increase Judgment Amount by $49,465.94 ("Motion to Increase Judgment"), Doc. 176. Aime moves for the Court to reconsider its Judgment, dated November 29, 2018, awarding Defendants Gregory Aime, Wolf Ventures, Inc. d/b/a Wolf Enterprises, Aime Consulting, LLC, and Aime Consulting, Inc. (collectively, "Defendants") $248,246.27 in compensatory damages for Count 1 of their counterclaims, and $5,000.00 in nominal damages for Count 2 of their counterclaims. Doc. 164. He further requests a modification of the final judgment to account for "newly discovered" damages. Doc. 176. The parties convened for a hearing on these matters on June 13, 2019. For the reasons stated herein and on the bench, the Court **DENIES** Aime's Motion for Reconsideration, Doc. 169, and **GRANTS** Aime's Motion to Increase Judgment, Doc. 176.

---

[1] Counterclaim Plaintiffs are Gregory Aime and one of his corporate entities, Wolf Ventures, Inc. (collectively, "Aime"). The original defendants in this matter are Aime, Aime Consulting, LLC, and Aime Consulting, Inc. (collectively, "Defendants").

1

## I.   BACKGROUND

### A.   Facts

Plaintiffs JTH Tax, Inc. d/b/a Liberty Tax Service and SiempreTax+, LLC (collectively, "Liberty" or "Plaintiff") is a tax preparation company.  Defendants were franchisees of Liberty Tax from approximately 2011 to 2016.  As of 2016, Defendants operated nine (9) franchise locations (hereinafter "Business") and a centralized processing center.

In about January 2016, Liberty learned that the Internal Revenue Service ("IRS") revoked the Electronic Filing Identification Number ("EFIN") for Defendants' franchises as a penalty for Defendants' activities.  Defendants were required to maintain a valid EFIN under their franchise agreements with Liberty.  Liberty could have terminated the franchise agreements under the terms of the contract but instead executed a Purchase and Sale Agreement ("PSA") with Defendants on January 21, 2016.   Under the PSA, Plaintiff purchased Defendants' franchises and gave Defendants until May 8, 2016, to obtain a valid EFIN and buy back the Business.  Accordingly, Plaintiff operated these franchises as company stores as of the closing date, January 21, 2016.

In the PSA, the parties agreed that "[a]ll expenses and liabilities arising out of or related to the Business, which arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser [i.e. Liberty]."  The PSA further provided that "if Seller [i.e. Aime] buys back the Business . . ., Purchaser agrees to pay to Seller the Adjusted Net Profits . . ., from the operation of the Business from the date of Closing through resale of the Business back to Seller."  To effectuate a buyback of the Business, the PSA instructed that Aime must furnish Liberty with written proof of a valid EFIN from the IRS by May 8, 2016, execute a separate purchase and sale agreement between the parties, and comply with Liberty's standard sales and approval process.

At some point, Liberty began to entertain the prospect of selling the Business to a third party, Mr. Jean-Louis, rather than proceeding with Mr. Aime's buyback opportunity under the PSA. Nevertheless, Plaintiff agreed to extend the EFIN deadline in the PSA from May 8, 2016, to December 31, 2016 (hereinafter "EFIN extension"). Aime did not obtain a valid EFIN until September 15, 2017 – after the first deadline had elapsed, but before the EFIN extension deadline. He paid considerable rent, utilities, and other operating expenses for the Business without reimbursement after the PSA closing, through the May 8, 2016, EFIN deadline, and beyond.

**B.     District Court Opinion**

This Court held a bench trial on January 11, 2017. Following trial, the Court DENIED Liberty's claims and AWARDED Defendants a Judgment on Counts 1 and 2 of their counterclaims. Doc. 127. Count 1 asserted breach of contract and Count 2 asserted breach of the implied covenant of good faith and fair dealing. Id. at 1. The Court FOUND that Liberty and Defendants had entered into a valid and enforceable contract, the PSA, and that Liberty was the first party to breach the terms of the agreement by not paying for rent and expenses related to the Business. Id. at 7. The Court also FOUND that the extension of the EFIN deadline from May to December was valid. Id. at 11. It reasoned that the statute of frauds did not apply to the EFIN extension, because Liberty was equitably estopped from asserting that defense. Id. at 12. Equitable estoppel was appropriate because "Mr. Aime relied upon Plaintiff's verbal promise of an EFIN extension to his detriment." Id. Finally, the Court FOUND that Plaintiff's course of conduct throughout the dispute and during the trial indicated that it did not respect or recognize Defendants' right to repurchase the Business, as promised in the PSA. Id. at 9.

The Court entered Judgment in favor of the Defendants in the amount of $2,736,896.17. Doc. 127 at 16. It stated that the Judgment was "comprised of the adjusted net revenues for tax

season 2016 and future lost profits." Doc. 127 at 13. The Court calculated 2016 lost profits to be $1,373,262, and future lost profits to be $1,363,634.17. Id. at 15. Central to the Court's award was the assumption that Defendants would have repurchased the business if Plaintiff had not breached the PSA. Id. at 13.

On March 1, 2017, Defendants filed a post-trial motion to amend the Judgment and award attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2). Doc. 130. The Court DENIED this motion. Doc. 138. Liberty appealed this Court's Judgment on July 24, 2017, Doc. 139, and Defendants Cross-appealed its Motion to Amend on August 2, 2017, Doc. 142.

## C.    Fourth Circuit Mandate

On appeal, the Fourth Circuit affirmed all aspects of the Judgment, except one. The Court found that Plaintiff's offer to extend the buyback deadline of Defendants' Business lacked consideration and was therefore unenforceable. Doc. 151 at 12. The Court described the consequences of its holding as follows:

> If there was a valid extension, then Liberty Tax wrongfully deprived Aime of the opportunity to repurchase his franchises, and he's entitled the profits he would have otherwise enjoyed. But if there was no extension, then Aime could not have bought back his businesses because he didn't obtain a new EFIN by the [original] May 8 deadline.

Id. at 7. Accordingly, the Court vacated the award of damages "to the extent it relied on the validity of the deadline extension for Defendants to buy back their stores." Id. The Court noted that its decision did not affect this Court's conclusion that Plaintiff first breached the PSA by failing to pay or reimburse certain expenses related to the franchises, and that "[a]ny damages flowing from that breach should remain, whether incurred before or after the May 8, 2016 buyback deadline." Id. at 24. It finally counseled that "Aime wasn't entitled to damages resulting from Liberty Tax's

4

refusal to sell back his former franchises. On remand, the district court should enter appropriate damages consistent with those principles." Id.

**D.      Post-Appeal Proceedings**

On October 18, 2018, this Court ORDERED additional briefing on the issue of damages in light of the Fourth Circuit's opinion. Doc. 158. It held a hearing and heard argument on November 28, 2018. Doc. 163. On November 29, 2018, it issued an Opinion and Order AWARDING Defendants $248,246.27 in compensatory damages for their breach of contract counterclaim (Count 1), and $5,000.00 in nominal damages for their breach of the implied covenant of good faith and fair dealing counterclaim (Count 2). Doc. 164. Defendants filed a petition for writ of certiorari to the Supreme Court on December 4, 2018. Doc. 168. The Petition was denied on January 7, 2019. Doc. 171.

On December 28, 2018, Aime filed the instant Motion for Reconsideration of this Court's Judgment on remand. Doc. 169. Liberty filed its Opposition on January 11, 2019, and Aime filed his Reply on January 17, 2019. Doc. 173.

On April 12, 2019, Aime filed his Motion to Increase Judgment Amount. Doc. 176. Liberty filed its Opposition on April 26, 2019, Doc. 178, and Aime filed his Reply on May 2, 2019, Doc. 180.

## II.      MOTION TO RECONSIDER

**A.      Legal Standard**

Aime brings his Motion to Reconsider pursuant to Federal Rule of Civil Procedure 54(b), which concerns the revision of "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). However, this Court's post-remand Order on damages adjudicated all outstanding claims

5

in the case. Accordingly, the Court shall construe Aime's Motion to Reconsider as one brought under Rule 59(e).[2]

Rule 59 "is an extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit recognizes three (3) grounds for granting relief under Rule 59(e): "(1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A., 258 F. Supp. 3d 647, 654 (E.D. Va. 2017), aff'd No. 17-1873, 2019 WL 1287632 (4th Cir. Mar. 21, 2019), as amended (Mar. 22, 2019). The purpose of such a motion is to allow "a district court to correct its own errors, 'sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" United States v. Danielczyk, 917 F. Supp. 2d 573, 576 (E.D. Va. 2013) (quoting Pac. Ins. Co., 148 F.3d at 403). Motions to reconsider under Rule 59 "may not be used to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that a party had the ability to address in the first instance." Id. (internal quotations omitted).

## B.    Analysis

Aime argues that Virginia's doctrine of equitable estoppel "permits this Court to award Aime his full lost profits or, alternatively, disgorge Liberty's wrongfully gained profits." Doc. 169. Aime's estoppel argument is largely premised on the same "snapshot in time" argument he made in his post-remand damages briefing. See Doc. 164. He avers that if he had initiated this

---

[2] Aime's confusion is likely due to the clerk's failure to issue a final "Clerk's Judgment" in the docket when the Court issued its Order. The oversight has since been corrected, and the clerk entered the Clerk's Judgment on April 8, 2019. Doc. 175. The delayed entry of judgment tolled the time limit for Aime to file his post-trial motions. See Sawyer v. Atl. Disc. Corp., 442 F.2d 349, 350 (4th Cir. 1971) (holding that a Rule 59 motion filed before formal entry of judgment was timely, because the time limit began to run on the date of the entry of judgment by the clerk).

suit when Liberty first breached the PSA,[3] he would have been entitled to expectation damages, including lost profits, based on the reasonable expectation that he would be able to obtain an EFIN by the May PSA deadline. Doc. 170 at 10. Aime now argues that he was prevented from suing earlier only because Liberty concealed its intention to breach the contract in bad faith. Id. He thus asserts that "[b]ecause Liberty deceived Aime into not suing and establishing his breach of contract damages at the time of Liberty's breach, Liberty should be estopped from relying on any evidence developed after that date to avoid paying damages . . . ." Id. In sum, Aime contends that the Court's damages award should not reflect the fact that he failed to obtain a valid EFIN by the PSA's buyback deadline.

Alternatively, Aime argues that Liberty should disgorge its adjusted net profits from 2016 that were "earned on Aime's back while concealing its true intentions, using his marketing, his good will, his employees, and his expense payments." Doc. 170 at 11.

Aime's equitable argument appears motivated by this Court's observation in its damages Order that, "[w]hile the law of this case as established by the appellate court supports the denial of lost profits, the outcome is troubling," because Liberty "acted in bad faith throughout its negotiations with Defendants . . . ." Doc. 164 at 10-11; see also Doc. 170 at 2. Notwithstanding the equities of the case, Aime's Motion fails for several reasons.

First, Aime is precluded from introducing its novel arguments of estoppel and disgorgement at this phase in the litigation. See Pac. Ins. Co., 148 F.3d at 404 (noting the "overwhelming authority that a party should not be permitted to raise new arguments or legal theories of liability on a motion to alter or amend the judgment under Rule 59(e)"). Aime failed to raise these defenses in his answer, at trial, in his first Rule 59 motion, on appeal, or in his post-

---

[3] This Court found that Liberty's breach occurred "long before" the expiration of the original buyback deadline. See Doc. 127 at 9.

remand damages briefing. In fact, Aime admitted that this Court's denial of expectation damages was "due to a failure in the parties' briefing" that caused "incomplete apprehension of the range of remedies available in [the Court's] proverbial tool chest." Doc. 170 at 4. As the Fourth Circuit has observed, "remand is not an opportunity for the parties to assert new argument or legal theories that were raised neither in the district court originally nor on appeal. Were the rule otherwise, there would be no end to any case." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir. 2007). Aime's failure to introduce his arguments at any stage prior to this Court's final judgment prevents him from doing so in the instant Motion.

Second, Aime's desired relief is precluded by the Fourth Circuit's mandate. The mandate rule "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007). This forecloses "litigation of issues decided by the district court but foregone on appeal or otherwise waived," and "relitigation of issues expressly or impliedly decided by the appellate court," unless exceptional circumstances are present. S. Atl. Ltd. P'ship of Tenn., LP v. Riese, 356 F.3d 576, 584 (4th Cir. 2004) (internal quotations omitted). Exceptional circumstances include: "(1) when controlling legal authority has changed dramatically; (2) when significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; and (3) when a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Chao, 511 F.3d at 467 (internal quotations omitted).

The mandate rule undercuts Aime's Motion in several ways. First, the Fourth Circuit has explicitly and implicitly barred Aime's arguments. This Court initially awarded Aime projected profits based on the expectation that Aime would have repurchased the Business but for Liberty's breach. Doc. 164. On appeal, the Fourth Circuit eliminated lost profits as damages, stating: "Aime

8

wasn't entitled to damages resulting from Liberty Tax's refusal to sell back his former franchises." Doc. 151 at 16. The court therefore explicitly precluded damages stemming from Aime's ability to repurchase the Business. Aime's estoppel argument urges this Court to award the same lost profits, calculated from his presumed ability to repurchase the Business, that were denied on appeal.

Moreover, the appellate court sua sponte considered whether the related doctrine of promissory estoppel applied to Aime's case and concluded that it did not. Id. at 11. It reasoned that, because Virginia does not recognize promissory estoppel, "we can't enforce Liberty Tax's promise [to extend the buyback deadline] based solely on Aime's reliance upon it, no matter how reasonable or foreseeable that reliance may have been." Id. This acknowledgment implicitly rejects the application of other equitable remedies.

The mandate rule further provides that "any issue that could have been but was not raised on appeal is waived and thus not remanded." Chao, 511 F.3d at 465. On appeal, Aime was aware that he was defending his award of lost profits. See generally Brief of Plaintiffs-Appellants, JTH Tax, Inc. et al v. Gregory Aime et al, No. 17-1859 (4th Cir. 2017). However, he failed to argue that Liberty should be equitably estopped from proffering any evidence that arose after its bad faith breach. Cf. S. Atl., 356 F.3d at 585-86 ("Recognizing what might come to pass under the Judgment, however, the [plaintiffs] failed to pursue the . . . issue on appeal. They were foreclosed by the mandate rule, therefore, from resurrecting this issue in the district court."). This oversight is clear, given the fact that the parties briefed the issue of equitable estoppel in relation to Liberty's statute of frauds argument. See Doc. 151 at 23. Accordingly, Aime has waived his argument.

Finally, none of the exceptions to the mandate rule apply. Aime has presented no new legal authority, no new evidence, and no "blatant error" by this Court or the Fourth Circuit that

9

would change this Court's consideration of Aime's lost profits. Cf. Chao, 511 F.3d at 467. Without such an exception, the mandate rule precludes Aime's claims of estoppel and disgorgement.

Although the Court need not reach this issue, Aime's arguments would nevertheless fail on the merits. "To establish a claim of equitable estoppel, without proving fraud, the complainant must show that he reasonably relied on the representations and conduct of the defendant, such that he changed his position to his detriment." Tuomala v. Regent Univ., 477 S.E.2d 501, 506 (Va. 1996). In Virginia, "there is no recognized cause of action for [equitable] estoppel," and the doctrine is usually asserted as a "shield" rather than a "sword." Parker v. Westat, Inc., 301 F. Supp. 2d 537, 544 (E.D. Va. 2004); see also Virginia Power Energy Mktg., Inc. v. EQT Energy, LLC, No. 3:11CV630, 2012 WL 2905110, at *10 (E.D. Va. July 16, 2012) (same, collecting cases). Here, Aime does not combat specific legal arguments with the doctrine. Rather, he offers the doctrine as a means of obtaining affirmative relief. This is not permitted by Virginia law. Parker, 301 F. Supp. 2d at 544. Moreover, Aime's claim that Liberty may be equitably estopped from relying on facts in the record in legally unsupported. Accordingly, Aime's equitable estoppel argument must fail.

His disgorgement argument is likewise unavailing. Disgorgement "is the act of giving up something, such as profits illegally obtained, on demand or by legal compulsion with the amount disgorged awarded to the party damaged by the illegal act." Frank Shop, Inc. v. Crown Cent. Petroleum Corp., 564 S.E.2d 134, 140 (Va. 2002). Aime has proffered no cases to support disgorgement as a remedy for breach of contract. Cf. Frank Shop, 564 S.E.2d at 140 (applying the doctrine as a remedy for a specific statutory violation); Quick Serve Concepts, LLC v. Cedar Fair, 83 Va. Cir. 59 (2011) (applying the doctrine to an unjust enrichment claim). Contract law

generally requires a party "to be put in the same position as it would have been if the contract had been performed." United Va. Bank of Fairfax v. Dick Herriman Ford, Inc., 210 S.E.2d 158, 160 (Va. 1974). This Court awarded Aime damages based on his actual losses from Liberty's breach of the PSA. Accordingly, the Court finds no reason to depart from its damages award in this case.

As this Court has already explained, "[c]laims for compensatory damages – in this case lost profits – must be proved with reasonable certainty." Doc. 164 at 9 (citing Preferred Sys. Sols., Inc. v. GP Consulting, LLC, 732 S.E.2d 676, 685 (Va. 2012)). Pursuant to the mandate of the Fourth Circuit, the EFIN deadline extension was invalid. The Court cannot circumvent the law of the case as established by the appellate court. Accordingly, Aime could not have validly repurchased his Business, and this Court may not award contract damages for lost profits that, in fact, did not occur.

### III. MOTION TO INCREASE JUDGMENT AMOUNT

Aime next moves the Court to increase his judgment amount by $49,465.94 based on "newly discovered" evidence.

### A. Legal Standards

Aime purports to bring his second post-judgment motion under Rules 59, 60, and 52. Because he filed the motion within twenty-eight (28) days of the clerk's entry of judgment, the Court shall evaluate the Motion under Rules 52 and 59. See Provident Life & Acc. Ins. Co. v. Clarke, No. 1:06CV792, 2014 WL 2967915, at *2 (E.D. Va. July 1, 2014), aff'd, 588 F. App'x 294 (4th Cir. 2014) ("If the motion is served within twenty-eight days of the judgment, it falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b).").

11

*i.* *Rule 52*

Rule 52(b) provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). This motion may accompany a Rule 59 motion. Id. (stating that it may accompany a Rule 59 motion for a new trial); see also Smith v. United States, No. 5:14-CV-30075, 2017 WL 1170876, at *2 (S.D.W. Va. Mar. 28, 2017) (observing that a Rule 52(b) motion may be brought in conjunction with a Rule 59(e) motion for reconsideration). Rule 52(b) is a "trial rule" that permits a court to amend "judicial findings made in an action tried on the facts without a jury." Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 1792460, at *2 (E.D. Va. May 5, 2011) (internal quotations omitted). "Among the purposes of such a motion is to correct manifest errors of law or fact." Morrow Corp. v. Harleysville Mut. Ins. Co., 110 F. Supp. 2d 441, 445 (E.D. Va. 2000). Although Rule 52 does not itself provide a standard of review, motions under this rule are often considered in conjunction with motions to amend under Rule 59. See, e.g., Stogsdill v. Keck, No. 3:12-CV-0007-JFA, 2015 WL 3396821, at *1 (D.S.C. May 26, 2015); see also Fed. R. Civ. P. 59(a)(2) ("After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.").

*ii.* *Rule 59*

As discussed in Section II.A., supra, the Fourth Circuit permits a court to reconsider its judgment under Rule 59(e) if a movant presents new evidence that was not available at trial or shows that there has been a clear error of law or a manifest injustice. Brundle, 258 F. Supp. 3d at 654. To obtain reconsideration based on newly discovered evidence, a party must show:

12

(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Quillin v. C.B. Fleet Holding Co., Inc., 328 Fed. App'x 195, 203 (4th Cir. 2009) (quoting Boryan v. United States, 884 F.2d 767, 771 (4th Cir.1989)). Therefore, "[e]vidence that is available to a party prior to entry of judgment . . . is not a basis for granting a motion for reconsideration as a matter of law." Id.; see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (stating that Rule 59 "may not be used to . . . present evidence that could have been raised prior to the entry of judgment").

While it appears the Fourth Circuit has not squarely defined "manifest injustice" under Rule 59, many courts in this circuit have followed Black's Law Dictionary, which defines "manifest injustice" as "an error by the court that is direct, obvious, and observable." See, e.g., Saunders v. Riverside Reg'l Jail, No. 3:10CV258-HEH, 2012 WL 2192262, at *2 (E.D. Va. June 14, 2012); United States v. Duke Energy Corp., No. 1:00CV1262, 2014 WL 4659479, at *5 (M.D.N.C. Sept. 17, 2014); see also Bay v. Clarke, No. 2:15CV64, 2017 WL 253971, at *9 (E.D. Va. Jan. 20, 2017) (defining the term as "occurring where the court has patently misunderstood a party or has made an error not of reasoning but of apprehension"); cf. Mack v. Yankah, 514 BR 159, 166 (E.D. Va. 2014) (finding manifest injustice where "that there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy").

13

**B.    New Findings of Fact[4]**

On December 26, 2012, Aime Consulting entered into a lease for a commercial property in Inwood, NY (the "Burnside Property"). See Doc. 178 at Ex. 2, p. 37. Aime personally guaranteed the Lease. Id.

On January 21, 2016, Liberty and Defendants entered into the PSA, which allowed Liberty to operate Defendants' former franchises while Defendants appealed the termination of their EFIN. Doc. 127 at 2. As a result of the PSA, Liberty operated Defendants' franchises, including the Burnside Property, as company stores from the closing date of the PSA in January 2016. Id. at 3; Trial Tr. 95:6-10. The post-termination obligations of the PSA instructed Defendants to assign the leases associated with the franchises to Liberty upon its request and the lessors' consent. Doc. 127 at 3. The lease for the Burnside Property was never legally transferred to Liberty. Doc. 178 at Ex. 3, p. 4. However, under the PSA, Liberty agreed to pay rent and utilities associated with the Burnside Property. See Doc. 1 at Ex. 10, p. 2.

On January 11, 2017, this Court held a three-day bench trial that omitted unpaid rent on the Burnside Property as damages. Docs 121-123.

On June 8, 2017, the landlord of the Burnside Property ("Landlord") filed a Complaint for unpaid rent against "Aime Consulting LLC d/b/a Liberty Tax Service and Gregory Aime" in New York state court ("Landlord Action"). Doc. 177 at Ex. C; Doc. 178 at Ex. 8. The Landlord Action complaint alleged that "[i]n or about May 2016, Liberty failed and refused to pay Rent in accordance with the terms of the Lease." Id. at 5. It further requested approximately $51,274.26 in unpaid rent and other liabilities under the terms of the lease agreement, plus attorneys' fees, costs, and expenses. Id. at 9.

---

[4] The parties have introduced evidence of the following undisputed facts.

The Landlord obtained a default judgment against Aime Consulting d/b/a Liberty Tax Service and Gregory Aime on December 29, 2017. Doc. 178 at Ex. 12. On July 2, 2018, the clerk of court in New York entered a judgment against Aime for $49,465.94, including interest, costs, and expenses ("Landlord Judgment"). Doc. 177 at Ex. B.

This Court held its remand hearing on damages on November 28, 2018. Doc. 163. It issued its award on November 29, 2018, Doc. 164, and the clerk entered judgment on April 7, 2018, Doc. 175.

## C.  Analysis

Pursuant to Rule 52(b) and the "manifest injustice" standard of Rule 59, the Court may amend its judgment if it has committed factual or legal error. Because the parties have not identified any such error, the most appropriate vehicle to review Aime's motion is the newly discovered evidence standard of Rule 59.

As a preliminary matter, the unpaid rent described in the Landlord Judgment, if offered during trial, would have been awarded as compensatory damages for Liberty's breach of the PSA. Under the PSA, Liberty indemnified Aime "from all expenses and liabilities arising out or related to [Liberty's] operation of the Business from the moment of Closing and thereafter." Doc. 1 at Ex. 10, p. 2. This Court's award of compensatory damages, including rent and utilities, was affirmed by the Fourth Circuit, which preserved "any damages flowing from [Liberty's breach of the PSA], whether incurred before or after the May 8, 2016 buyback deadline." Doc. 151 at 15. Here, Liberty acquired the Burnside Property pursuant to the PSA. Rent was among the costs arising out of its operation of the Business. Accordingly, the unpaid rent on the Burnside Property would fall within the ambit of damages properly awarded in this case.

Liberty first attempts to distinguish the Landlord Judgment from Aime's other damages under the PSA. It argues that its obligations under the contract were limited to rent and utilities "(1) submitted by Defendants to Liberty (2) during the PSA period." Doc. 178 at 4. However, the PSA contains no such limiting language. Liberty next argues that Aime is liable for unpaid rent because he never transferred the lease to Liberty. Id. This argument ignores the Court's finding that Liberty's own actions led to Aime's failure to transfer the lease. See Doc. 127 at 12 ("Plaintiff not only did not timely request that these leases be assigned, but stated in communications between the Parties that such leases should not be assigned, which is consistent with the evidence in this case."). After Liberty breached the PSA, Aime was excused from his obligation to transfer the lease. See Horton v. Horton, 487 S.E.2d 200, 204 (Va. 1997) ("If [an] initial breach is material, the other party to the contract is excused from performing his contractual obligations."). However, this Court and the Fourth Circuit found that Liberty remained liable for the damages stemming from its breach of the PSA. If Liberty had fully performed under the PSA, Aime would not have incurred liability for the Landlord Judgment. Accordingly, Aime's liability for unpaid rent on the Burnside Property may properly be considered damages resulting from Liberty's breach of the PSA.

Because the Landlord Judgment would have modified Aime's damages at trial, the evidence is material and not "merely cumulative or impeaching." Cf. Quillin, 328 Fed. App'x at 203. Thus, to obtain relief under Rule 59, Aime must show that: (1) this evidence is newly discovered, and (2) he could not have previously discovered this evidence with due diligence. Id.

Liberty insists that the Landlord Judgment is not newly discovered evidence because it was entered after trial in this matter. Cf. Lowe v. Mercedes Benz of N. Am., Inc., 103 F.3d 118 (1996) (unpublished) ("Under both rules [59 and 60(b)(2)], the evidence must have been in existence at

the time of the trial.") (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2859 (2d ed. 1995)). However, Liberty ceased paying rent on the Burnside Property in May 2016. See Doc. 178 at Ex. 8, p. 6. The trial in this case did not occur until January 2017. Although the Landlord Judgment memorializes Aime's liabilities for unpaid rent, the acts giving rise to this debt occurred prior to the trial in this case. Accordingly, the Landlord Judgment is properly characterized as newly discovered evidence that existed at the time of trial.

Liberty next argues that Aime could have discovered the Landlord Judgment with due diligence prior to trial and this Court's hearing on damages. See Boryan, 884 F.2d at 771 ("[T]o support a motion for reconsideration, the movant is obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that It could not with reasonable diligence have discovered and produced such evidence at the hearing . . . .") (quotations omitted). Aime has carried his burden by submitting a declaration under penalty of perjury that he only discovered the default judgment entered against him on March 30, 2019. Doc. 177 at Ex. A ("Aime Decl.") ¶ 3. Aime's testimony is bolstered by his logical argument that he had no incentive to withhold this source of potential damages.

Liberty's evidence to the contrary fails to rebut Aime's showing in several ways. To support its claim that Aime should have discovered the Burnside Property debt, Liberty offered affidavits of service for various court documents from the Landlord Action. See Doc. 178 at Exs. 8-12. These affidavits represented that Aime was served between November 2016 and July 2018 with notice of the Landlord Action at three (3) locations: (1) the Burnside Property itself; (2) a Queens Village address; and (3) a Long Island City address. Id. However, Liberty offered no persuasive evidence that any of the locations was a proper mailing address for Aime during the relevant time period. It offered no evidence that the Long Island city address was Aime's residence

17

during this time, and it offered only two unpersuasive exhibits to support Aime's connection with the Queens Village address.[5] Finally, Liberty occupied the Burnside Property after the closing of the PSA, making notices to that property inaccessible to Aime. See Aime Decl. ¶ 7; Doc. 177 at Ex. 3, pp. 2-3.

Liberty's affidavits of service also lack evidentiary value. Assuming the affidavits are authentic,[6] they nevertheless contain inadmissible hearsay. While the affidavits arguably fall under the business records exception to the hearsay rule under Rule 803(6),[7] the statements of the affiants themselves fall under no such exception. Because the process servers are not necessarily employees of the same business as the notaries public, this "hearsay within hearsay" is not encompassed by the business records exception. Cf. Fed. R. Evid. 803 advisory committee notes (interpreting 803(6) and observing that "[i]f . . . the supplier of the information does not act in the regular course [of business], an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail."); United States v. Burruss, 418 F.2d 677, 679 (4th Cir. 1969) (holding that statements by

---

[5] See Doc. 178 at Ex. 3 (containing an invoice addressed to "Dorian Jackson" of "Liberty Tax Service" at the Queens Village address); id. Ex. 5 (containing a letter from the IRS to Gregory Aime that had been faxed and not mailed).

[6] Liberty failed to introduce extrinsic evidence to support the affidavits' authenticity, nor do they appear to be "self-authenticating" pursuant to Federal Rule of Evidence 902. Cf. Fed. R. Evid. 902(2) (requiring a seal or certification of a proper custodian); Fed. R. Civ. P. 44(a) (requiring an officer with legal custody of an official record to attest to the authenticity of that record); 28 U.S.C. §1738 (requiring a seal and attestation of the clerk to admit documents from another court). Moreover, while each of the affidavits was signed by a notary public, Liberty also failed to provide the requisite certificates of acknowledgement to accompany the affidavits. See Fed. R. Evid. 902(8).

[7] Rule 803(6) provides an exception to the hearsay rule when:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

non-employees collected in the ordinary course of business are hearsay, notwithstanding the Federal Business Records Act,[8] because there is no assurance of reliability for those statements). Liberty has not argued than an alternative exception to the rule against hearsay applies. Accordingly, the affidavits of service may be offered to show that a record of service was made, but not that process servers in fact attempted service on Aime. Without such evidence, the Court **FINDS** that the unpaid rent on the Burnside Property could not have been discovered with reasonable diligence.

Liberty's final argument is that the mandate rule and "law of the case" doctrine preclude the admission of Aime's new evidence at this stage of the proceedings. However, the mandate rule, like Rule 59, contains an exception for evidence that was not accessible at trial. See Doe v. Chao, 511 F.3d 461, 467 (4th Cir. 2007). Furthermore, the "law of the case" doctrine applies only to issues of law. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815–16 (1988) ("As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Accordingly, Liberty's arguments against Aime's newly discovered evidence must fail, and the Court **GRANTS** Aime's Motion to Increase Judgment Amount, Doc. 176.

## IV.    CONCLUSION

For the reasons stated herein, the Court **DENIES** Aime's Motion for Reconsideration, Doc. 169, and **GRANTS** Aime's Motion to Increase Judgment Amount, Doc. 176. The Judgment in this case shall be **INCREASED** by $49,465.94.

---

[8] This statute is a parallel to the business records exception to the hearsay rule for government documents. See 28 U.S.C. § 1732.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
_____
Henry Coke Morgan, Jr.
Senior United States District Judge
_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
June 25, 2019